Alan Beck (SBN 276646)
2962 Harcourt Drive
San Diego, California 92123
Telephone: (619) 905-9105
Email: alan.alexander.beck@gmail.com

Kevin Gerard O'Grady (admitted pro hac vice)
Law Office of Kevin O'Grady, LLC
1164 Bishop Street, Suite 1605
Honolulu, Hawaii 96813
(808) 521-3367
Hawaii Bar No. 8817
Kevin@KevinOGradyLaw.Com

Attorneys for Plaintiffs:

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **DEEPAK CHOPRA AND DEEPIKA CHORPA;**<br><br>Plaintiffs,<br><br>v.<br><br>**COUNTY OF ALAMEDA, DUBLIN POLICE SERVICES, VICTOR FOX in his OFFICIAL CAPACITY AS CHIEF OF POLICE OF DUBLIN POLICE SERVICES, WILLIAM COWENS in his INDIVIDUAL CAPACITY, CHRISTOPHER SHEPARD in his INDIVIDUAL CAPACITY, CITY OF DUBLIN;**<br><br>Defendants. | Case No.   3:25-cv-03305-WHO<br><br>**VERIFIED FIRST AMENDED COMPLAINT FOR**<br>**1. UNLAWFUL SEARCH**<br>**2. UNLAWFUL SEIZURE**<br>**3. VIOLATION OF DUE PROCESS RIGHTS**<br>**4. VIOLATION OF CAL. CIVIL CODE § 52.1**<br><br>**JURY TRIAL DEMANDED** |

**VERIFIED FIRST AMENDED COMPLAINT**

COMES NOW the Plaintiffs, Deepak Chopra and Depika Chopra ("Plaintiffs"), by and through their undersigned counsel, and complains of the Defendants as follows:

-1-

# PARTIES

1. Plaintiff Deepak Chopra is a natural person and a citizen of the United States. He was a resident of the State of California and resided in the County of Alameda at the time of the incident giving rise to this action. He is one of the victims of the conduct complained about below.

2. Plaintiff Deepika Chopra is a natural person and a citizen of the United States. She was a resident of the State of California and resided in the County of Alameda at the time of the incident giving rise to this action. She is one of the victims of the conduct complained about below.

3. Plaintiffs Deepak Chopra and Deepika Chopra are a married couple.

4. As such, they jointly own Dublin Knives and all of the inventory at issue in this litigation.

5. Defendant County of Alameda is a municipal county incorporated under the laws of the State of California.

6. Defendant Dublin Police Services ("DPS") is a subdivision of the County of Alameda. It is duly organized under the laws of the State of California, to provide, among other things, law enforcement throughout the City of Dublin.

7. Defendant Victor Fox is a natural person and a citizen of the United States and the State of California. Defendant Fox is the Chief of Police of Dublin Police Services. He is sued in his official capacity only.

8. Defendant William Cowens is a natural person and a citizen of the United States and the State of California. On information and belief, Defendant William Cowens, sued in his personal/individual capacity only, is a peace officer employed by Defendant DPS.

9. Defendant Christopher Shepard is a natural person and a citizen of the United States and the State of California. Defendant Christopher Shepard, is sued in his personal/individual capacity only, is a peace officer employed by Defendant DPS.

10. Defendant City of Dublin is a city located in Alameda County duly organized under the laws of the State of California.

11. At all times mentioned, each individual Defendant was the agent and/or employee of each government Defendant and in doing the things alleged was acting within the course and scope

of such agency and/or employment and with each and every other Defendant's actual and implied permission, consent, authorization, and approval. Employees and members of the DPS enforced the policies complained about below.

## JURISDICTION AND VENUE

12. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331, 1343, 1367, 2201, 2202 and 42 U.S.C. §§ 1981, 1983, and 1988.

13. Venue lies in this Court pursuant to 28 U.S.C. § 1391.

## JURY TRIAL DEMANDED

14. Plaintiffs demand a trial by jury on each and every one of their claims as pleaded herein.

## STATEMENT OF FACTS

15. Plaintiffs were residents of the County of Alameda at the time of the complained about incident where they owned a knife shop called Dublin Knives which was located in the City of Dublin.

16. Dublin Knives was started in 2004 by Plaintiffs and was in business in Dublin for 19 years until the date of the incident at issue. Dublin Knives has sold knives to police officers in the past- including to Alameda County.

17. Dublin Knives, at all times relevant herein, had a City of Dublin business license.

18. Dublin Knives was located in a building which was primarily used for office space. The front of the building on the bottom floor was retail- but Dublin Knives is at the back of the building in an office section of the building and not visible from Dublin street. All suites upstairs and in the back of the building bottom floor were offices.

19. In or about April 2022, Plaintiff Deepak went to the Dublin police station with the intent of making a police report and initiating a criminal charge regarding an employee of Dublin Knives that Plaintiff Deepak believed was misappropriating funds and or inventory. Plaintiff Deepak met with Officer Baker of the Dublin police department who was in police uniform and the two of them talked for almost thirty minutes regarding the employee. Officer Baker declined to take a police report or initiate a criminal case against the employee and convinced Plaintiff Deepak to

pursue alternative methods of self-help to resolve the alleged misappropriation of funds and/or inventory.  Plaintiff Deepak remembered and remembers what Officer Baker looks like.

20. Knives, DBA Pro-Tech LLC, manufactures all forms of automatic knives including switchblades. It is located at 1037 S Melrose St STE B, Placentia, CA 92870 and Squid Industries located at 894 Faulstich Ct, San Jose, CA 95112. It also manufactures balisong (also known as butterfly) knives;

21. Dublin Knives operated a private business that typically only allowed customers in after scheduling an appointment by phone.

22. Dublin Knives had a sign posted inside that said the business is not open to the general public.

23. Dublin Knives typically kept the doors locked.

24. Dublin Knives' typical business practice was to allow customers in by appointment only.

25.  Thus, Dublin Knives was not open to the public.

26. An accurate drawing of the layout of Dublin Knives is attached to this complaint as Exhibit 1.

27. On or about April 12, 2023, Plaintiff Deepak Chopra contacted DPS to complain about a man, whose name was determined to be Fang, who had purchased inventory with a stolen credit card.  DPS instructed Plaintiff Deepak to call back on a non-emergency line if the person ever returned to the store.

28. On or about April 13, 2023. Plaintiff Deepak Chopra called DPS to complain that Fang had returned to Dublin Knives, was armed with a taser and Plaintiff believed Fang was going to rob Dublin Knives.  Plaintiff Deepak called the number that DPS had instructed him to use if Fang ever returned.  On the day in question, while Plaintiffs were eating, Fang came into the establishment, unannounced, without a prior appointment, and startled Plaintiffs who were caught off-guard.  Fang entered the office from a doorway entrance from a hallway designed for access to the office spaces within in the building only. Dublin Knives had a door open so that Plaintiffs could

get some ventilation. Fang charged in uninvited with a taser displayed in his hand and appeared, to Plaintiffs, to be under the influence of an impairing or intoxicating substance.

29. Defendants Cowens and Shepard arrived to investigate this crime.

30. Plaintiffs allowed them into Dublin Knives for the express purpose of investigating the crime.

31. Plaintiffs feared for their safety as Fang was agitated, animated, and moving quickly about the store prior to the DPS officers arriving.

32. When Defendants Cowens and Shepard arrived, they were quickly brought to Fang, in the area marked with "F" in Exhibit 1, who confessed to having previously used a stolen credit card. Defendants Cowens and Shepard, as part of their training, asked Fang if he had a knife on him and he said he did. Defendants Cowens and Shepard also patted Fang down, discovered a loaded, unpermitted, concealed 9mm handgun on him and detained Fang in handcuffs.

33. During the course of their investigation they observed a number of knives that Defendants believed, based on mere visual review, might meet the legal definition of switchblades.

34. During the course of their investigation, Officer Shepard called Alameda County District Attorney Inspector Ramsey who informed him that mere possession of switchblades under any circumstances is illegal;

35. In California, the possession of switchblades in public is prohibited under specific circumstances. *See* Cal. Penal Code section 21510. This section generally reads;

> Every person who does any of the following with a switchblade knife having a blade two or more inches in length is guilty of a misdemeanor:
>
> (a) Possesses the knife in the passenger's or driver's area of any motor vehicle in any public place or place open to the public.
>
> (b) Carries the knife upon the person.
>
> (c) Sells, offers for sale, exposes for sale, loans, transfers, or gives the knife to any other person. While there is a federal law which regulates switchblades, it does not restrict the possession of switchblades unless one is living in a territory or other federal enclave and it "has not been enforced since 2010." *Knife Rts., Inc. v. Garland*, No. 4:23-CV-00547-O, 2024 WL 2819521, at *3 (N.D. Tex. June 3, 2024)

36. It is legal to possess switchblades under federal law. "In fact, according to Plaintiffs' own evidence, switchblades are widely distributed, sold, and used in intrastate commerce. …the Court finds that Section 1242 does not serve as a 'a de facto prohibition on possession' or an 'outright ban.' " *KNIFE RIGHTS, INC., ET AL., Plaintiffs, v. PAMELA BONDI, ET AL., Defendants. Additional Party Names: Adam, Evan Kaufmann, Jeffrey Folloder, RGA Auction Sol., Rodney Shedd, Russell Arnold*, No. 4:24-CV-0926-P, 2025 WL 1477094, at *11 (N.D. Tex. May 22, 2025).

37. The State of California has taken the position in litigation that it is legal to possess switchblades as long as possession is not in public, *See* Paragraph 38.

38. In *Knife Rights v. Bonta*, 24-5536 (9th Cir.) Doc. No. [17] which is California's Answering Brief in a Ninth Circuit appeal challenging the constitutionality of California's switchblade ban on Second Amendment grounds, the State of California states that "Plaintiffs may possess knives that fall under California's definition of switchblade knife 'at home for self-defense.' ". *Id* at 42. California also says in their Answering Brief that "California does not prohibit all possession of those types of weapons [referring to switchblades over two inches], including inside the home." *Id* at 1. *See also* Exhibit 2 at pages 1 and 42.

39. Therefore, the State of California interprets its laws to allow for the legal possession of switchblades.

40. Thus, it is legal for a California resident to possess switchblades in one's home or private business.

41. The switchblades kept in Plaintiffs' store were legal to possess inside of Dublin Knives because they were kept in a private business that was not open to the public. The knives were not in a motor vehicle.

42. Dublin Knives consisted of one main room where customers who had been invited in were allowed and several other rooms not open to anyone other than staff.

43. This included a room which was used as a warehouse to keep stock and was not open to anyone other than staff.

44. After observing the switchblade knives in the main room, Defendants Cowens and Shepard searched the premises for other switchblade knives without the consent of Plaintiffs.

45. Without the consent of Plaintiffs, Defendants Cowen and Shepard entered the warehouse room, and other warehouse/storage areas, marked as "w" on Exhibit 1, and found a number of switchblade knives.

46. Inside of the warehouse section were many closed boxes.

47. Defendants Cowens and Shepard opened and searched these boxes.

48. Defendants Cowens and Shepard found most if not all of the seized switchblades in these boxes.

49. Defendants Cowens and Shepard only learned of the switchblade knives located in the warehouse section of Dublin Knives as a result of these searches;

50. Most if not all of the switchblades in the warehouse room were to be legally sold in other states in conformity with the Federal Switchblade Act.

51. "Sections 1242 and 1243 [The Federal Switchblade Act] of this title shall not apply to—
(1) any common carrier or contract carrier, with respect to any switchblade knife shipped, transported, or delivered for shipment in interstate commerce in the ordinary course of business;
(2) the manufacture, sale, transportation, distribution, possession, or introduction into interstate commerce, of switchblade knives pursuant to contract with the Armed Forces;
(3) the Armed Forces or any member or employee thereof acting in the performance of his duty;
(4) the possession, and transportation upon his person, of any switchblade knife with a blade three inches or less in length by any individual who has only one arm; or
(5) a knife that contains a spring, detent, or other mechanism designed to create a bias toward closure of the blade and that requires exertion applied to the blade by hand, wrist, or arm to overcome the bias toward closure to assist in opening the knife."
*See* 15 U.S.C.A. § 1244 (West)

52. This area, referenced in paragraph 42, was especially not open to the public.

53. Defendants Cowens and Shepard seized all the switchblade knives they found.

54. In total, Defendants seized roughly 1,439 switchblade knives that were transported and booked into evidence at Dublin Police Services. Switchblade knives, and "automatic" knives are not identifiable merely by visual inspection and must be seized and manipulated to determine if a

-7-

knife meets the legal definition of a switchblade and or automatic knife. Defendants engaged in an illegal search and seizure by seizing, manipulating knives that they had only previously visually seen and keeping the knives they illegally seized.

55. The approximate total wholesale value of the knives seized is $500,000.00.

56. Most of the switchblades seized came from the private warehouse area. Fang was not in the warehouse area. There was never any evidence to believe that anyone other than Fang had sought to rob Dublin Knives or had used a stolen credit card, thus there was no reason to think anyone else was present other than Plaintiffs and their minor son and that there was no reason to believe there was any evidence of Fang's crimes in any location other than on his person.

57. The switchblade knives seized are still in evidence at the Dublin Police Station.

58. After seizing the knives, Defendant Shepard issued citations to Plaintiffs Deepak and Deepika Chopra.

59. The Alameda County District Attorney's Office declined to pursue charges.

60. A true and correct scope of a Disposition Report received by Dublin Police Services on August 9, 2023, indicating that the case was not charged, is attached. *See* Exhibit 3.

61. Plaintiffs have filed a petition to have their wrongfully seized property returned to them. *See* Deepika Chopra's Petition to Return Property filed in Superior Court of California, County of Alameda County, Case No. 25-CR-002658. *See* Exhibit 4.

62. This motion was initially granted which demonstrates it is legal to possess switchblades in at least some circumstances and that switchblades are not dispositively contraband. *See* Exhibit 5. Order to Return Switchblades.

63. Later, the City of Dublin had the initial order set aside by claiming a lack of notice.

64. The City of Dublin is now opposing the petition.

65. A hearing is set for this petition on August 22, 2025. Attached is a true and accurate email from Karen Foss, courtroom clerk to Alameda Superior Court Judge Paul Delucchi confirming continuation of the hearing on Petition to Return Property is scheduled for August 22, 2025 in Department 713. *See* Exhibit 6.

66. Plaintiffs do not believe that this petition qualifies as the type of state court proceeding which warrants this court abstaining from adjudicating this matter.

67. However, if this Court disagrees, circuit precedent dictates that this court stay this action pending the outcome of Plaintiffs' petition rather than dismiss it because this lawsuit is for damages.

68. "We conclude that *Younger* principles apply to actions at law as well as for injunctive or declaratory relief because a determination that the federal plaintiff's constitutional rights have been violated would have the same practical effect as a declaration or injunction on pending state proceedings. However, federal courts should not dismiss actions where damages are at issue; rather, damages actions should be stayed until the state proceedings are completed." *Gilbertson v. Albright*, 381 F.3d 965, 968 (9th Cir. 2004)."

69. On February 5, 2024, Plaintiffs, through counsel, submitted a government claim to the City of Dublin pursuant to California Government Code § 910 et seq., arising from the events described herein. *See* Exhibit 7.

70. Plaintiffs' claim was rejected on February 27, 2024. *See* Exhibit 8.

71. Defendants' search and seizure of Plaintiffs' property, including in the warehouse areas, was authorized, at the time of the search and seizure, by coordination with Inspector Derrel Ramsey of the Alameda County District Attorney's office and the peace officers.

**FIRST CAUSE OF ACTION**

**42 U.S.C. § 1983 – Unlawful Search in Violation of the Fourth Amendment**

**(Against Defendants Cowens and Shepard )**

72. Plaintiffs repeat and re-plead Paragraphs 1 through 67, inclusive, and incorporate the same herein by reference.

73. 42 U.S.C. § 1983 provides that:

> Every person, who under color of any statute, ordinance, regulation, custom or usage of any state or territory or the District of Columbia subjects or causes to be subjected any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges or immunities secured by the constitution and law shall be liable to the party injured in an action at law, suit in equity, or other appropriate proceeding for redress . . .

74. Plaintiffs are citizens of the United States and all of the individual peace officer Defendants to this claim are persons for purposes of 42 U.S.C. § 1983.

75. All individual Defendants to this claim, at all times relevant hereto, were acting under the color of state law in their capacity as peace officers employed by the DPS and their acts or omissions were conducted within the scope of their official duties or employment.

76. At the time of the complained of events, Plaintiffs had a clearly established constitutional right under the Fourth Amendment to be secure from unreasonable searches of their property.

77. "A Fourth Amendment "search" occurs when a government agent "obtains information by physically intruding on a constitutionally protected area," *United States v. Jones*, 565 U.S. 400, 406 n.3, 132 S.Ct. 945, 181 L.Ed.2d 911 (2012), or infringes upon a "reasonable expectation of privacy," *Katz v. United States*, 389 U.S. 347, 360, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967). " *Whalen v. McMullen*, 907 F.3d 1139, 1146 (9th Cir. 2018).

78. "In a physical intrusion case like this one, whether a "search" occurred depends on whether the investigation (1) "took place in a constitutionally protected area" and (2) was "unlicensed" or without consent." *Id* at 1147 (quoting *Florida v. Jardines*, 569 U.S. 1, 9, 133 S.Ct. 1409, 185 L.Ed.2d 495 (2013). *See also Fla. v. Jardines*, 569 U.S. 1, 11, 133 S. Ct. 1409, 1417, 185 L. Ed. 2d 495 (2013) ("That the officers learned what they learned only by physically intruding on Jardines' property to gather evidence is enough to establish that a search occurred.").

79. This area, including, but not limited to, the "warehouse" section, was not open to customers and Defendants Cowens and Shepard did not have permission to enter the warehouse area of Dublin Knives and they did not have a warrant, nor were there any exceptions to the warrant requirement.

80. Here, Defendants Cowens and Shepard engaged in an unlawful search when they entered the warehouse area of Dublin Knives;

81. Defendants Cowens and Shepard engaged in an additional unlawful search when they searched the boxes for switchblade knives.

82. The switchblade knives in the warehouse were not in plain view when Defendants Cowens and Shepard entered Dublin Knives;

83. The switchblade knives in the boxes in the warehouse were not in plain view when Defendants Cowens and Shepard entered the warehouse section of Dublin Knives.

84. When Defendants Cowens and Shepard entered Dublin Knives they found Fang in the area marked "w" on exhibit 1- there was no need or authority to go beyond that room.

85. The search of the warehouse was unreasonable because Defendants Cowen and Shepard did not have permission to enter the warehouse section of the store, they did not have a warrant and there were no exigent circumstances or other exception to the warrant requirement, which would authorize a search of the warehouse area without a warrant;

86. The search of the boxes inside of the warehouse violated the Fourth Amendment and was unreasonable because Defendants Cowens and Shepard did not have permission to search the boxes, they did not have a warrant and there were no exigent circumstances to search the boxes.

87. Even if Defendants Cowen and Shepard had authority to enter the warehouse section, they did not the right to search the boxes in which switchblades were stores and the search of those boxes violated the Fourth Amendment.

88. At the time of the search, it was clearly established that these searches were unconstitutional;

89. It is a "basic principle of Fourth Amendment law" that searches and seizures inside a home without a warrant are presumptively unreasonable. *Payton v. New York*, 445 U.S. 573, 586, 100 S. Ct. 1371, 1380, 63 L. Ed. 2d 639 (1980);

90. It is clearly established that Fourth Amendment rights apply to a private business in the same manner as they do in a home;

91. "The businessman, like the occupant of a residence, has a constitutional right to go about his business free from unreasonable official entries upon his private commercial property." *See v. City of Seattle*, 387 U.S. 541, 543, 87 S. Ct. 1737, 1739, 18 L. Ed. 2d 943 (1967). *See also G.*

-11-

1  *M. Leasing Corp. v. United States,* 429 U.S. 338, 353, 97 S. Ct. 619, 629, 50 L. Ed. 2d 530 (1977)
2  ("The respondents do not contend that business premises are not protected by the Fourth
3  Amendment. Such a proposition could not be defended in light of this Court's clear holdings to the
4  contrary.");

5    92.    Thus, Defendants Cowens and Shepard are not entitled to qualified immunity for the
6  complained of conduct;

7    93.    As a proximate result of Defendants' unlawful conduct, Plaintiffs have suffered actual
8  other damages and losses as described herein entitling them to compensatory and special damages,
9  in amounts to be determined at trial;

10   94.    On information and belief, Plaintiffs may suffer lost future earnings and impaired
11  earnings capacities due to the seizure of their property;

12   95.    Plaintiffs are further entitled to attorney's fees and costs pursuant to 42 U.S.C. §1988,
13  pre-judgment interest and costs as allowable by federal law;

14   96.    All individual Defendants to this claim engaged in the conduct described by this
15  Complaint willfully, maliciously, in bad faith, and in reckless disregard of Plaintiffs' federally
16  protected constitutional rights;

17   97.    All individual Defendants to this claim did so with shocking and willful indifference
18  to Plaintiffs' rights;

19   98.    The acts or omissions of all individual Defendants to this claim were the moving
20  forces behind Plaintiffs' constitutional injuries;

21   99.    The acts or omissions of all individual Defendants to this claim as described herein
22  intentionally deprived Plaintiffs of their constitutional rights and caused them other damages;

23

24                           **SECOND CAUSE OF ACTION**
25          **42 U.S.C. § 1983 – Unlawful Seizure in Violation of the Fourth Amendment**
26                                    **(All Defendants)**

27   100.   Plaintiffs repeat and re-plead Paragraphs 1 through 99, inclusive, and incorporate the
28  same herein by reference;

101. 42 U.S.C. § 1983 provides that:

> Every person, who under color of any statute, ordinance, regulation, custom or usage of any state or territory or the District of Columbia subjects or causes to be subjected any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges or immunities secured by the constitution and law shall be liable to the party injured in an action at law, suit in equity, or other appropriate proceeding for redress . . .

102. Plaintiffs are citizens of the United States and all of the individual peace officer Defendants to this claim are persons for purposes of 42 U.S.C. § 1983;

103. All individual Defendants to this claim, at all times relevant hereto, were acting under the color of state law in their capacity as peace officers employed by the DPS and their acts or omissions were conducted within the scope of their official duties or employment;

104. At the time of the complained of events, Plaintiffs had a clearly established constitutional right under the Fourth Amendment to be secure in their persons and effects from unreasonable seizure of their property;

105. In *Lavan v. City of Los Angeles*, 693 F.3d 1022, 1030 (9th Cir. 2012) the Ninth Circuit found "by seizing and destroying Appellees' unabandoned legal papers, shelters, and personal effects, the City meaningfully interfered with Appellees' possessory interests in that property. No more is necessary to trigger the Fourth Amendment's reasonableness requirement.";

106. "[T]he constitutional standard is whether there was "some meaningful interference" with Plaintiffs' possessory interest in the property." *Id* at 1028;

107. "Indeed, the Supreme Court has recognized protected possessory interests even in contraband: In *United States v. Jacobsen,* for example, the Court found that the government's testing of illegal cocaine (which resulted in the destruction of a portion of the cocaine) was a "seizure" that "affect[ed] respondents' possessory interests protected by the [Fourth] Amendment, since by destroying a quantity of the powder it converted what had been only a temporary deprivation of possessory interests into a permanent one." 466 U.S. at 124–125, 104 S.Ct. 1652." *Id* at 1030;

108.     " 'The question then becomes whether the City, in seizing [Appellees'] property, acted reasonably under the Fourth Amendment.' " *Id* (quoting *Lavan v. City of Los Angeles*, 797 F.Supp.2d 1005, 1013 (C.D.Cal.2011);

109.     It has been clearly established since at least *Weeks v. United States*, 232 U.S. 383 (1914) that a warrantless seizure of items from a private residence without exigent circumstances is unreasonable and constitutes a violation of the Fourth Amendment to the U.S. Constitution. *See also Gouled v. United States*, 255 U.S. 298 (1921) (finding this applies even when there is no coercion or threats involved and involved a person's office i.e. their private business).

110.     Any reasonable peace officer knew or should have known of this right at the time of the complained of conduct as they were clearly established at that time;

111.     Defendants Cowens and Shepard's actions, as described herein, were objectively unreasonable in light of the facts and circumstances confronting him and violated Plaintiffs' Fourth Amendment rights;

112.     Defendants Cowens and Shepard unlawfully seized Plaintiffs' property when they seized and took custody of Plaintiffs' legal switchblades without a warrant or any other valid authority;

113.     None of the Defendant peace officers present took reasonable steps to protect them from the objectively unreasonable and conscience shocking seizure of their personal property.  They are each therefore liable for the injuries and damages resulting from the objectively unreasonable seizure by all officers involved in the seizure;

114.     All individual Defendants to this claim engaged in the conduct described by this Complaint willfully, maliciously, in bad faith, and in reckless disregard of Plaintiffs' federally protected constitutional rights;

115.     All individual Defendants to this claim did so with shocking and willful indifference to Plaintiffs' rights;

116.     The acts or omissions of all individual Defendants to this claim were the moving forces behind Plaintiffs' constitutional injuries;

117. The acts or omissions of all individual Defendants to this claim as described herein intentionally deprived Plaintiffs of their constitutional rights and caused them other damages;

118. Defendants Cowens and Shepard are not entitled to qualified immunity for the complained of conduct;

119. As a proximate result of Defendants' unlawful conduct, Plaintiffs have suffered actual other damages and losses as described herein entitling them to compensatory and special damages, in amounts to be determined at trial;

120. On information and belief, Plaintiffs may suffer lost future earnings and impaired earnings capacities due to the seizure of their property;

121. Plaintiffs are further entitled to attorneys' fees and costs pursuant to 42 U.S.C. §1988, pre-judgment interest and costs as allowable by federal law;

122. Defendants County of Alameda, City of Dublin, DPS and Defendant Fox in his official capacity are also liable for this seizure because it was done pursuant to an official policy and/or custom of the Dublin Police Services and/or County of Alameda and or Defendant Fox, as evidenced by Alameda County District Attorney Inspector Ramsey's instruction and statement to Defendant police officers that the mere possession of switchblades under any circumstances is illegal;

123. Upon information and belief, the Dublin Police Services and/or County of Alameda, and/or the City of Dublin, and/or Defendant Fox, have a custom or policy of seizing switchblade knives even when, such as here, they are legally possessed;

124. Defendants County of Alameda, City of Dublin, DPS and Defendant Fox in his official capacity are also liable for this seizure because they have ratified the individual Defendants' illegal seizure of Plaintiffs' switchblades;

125. They have done so by continuing to hold on to Plaintiffs' switchblades even after Plaintiffs' have demanded them back and opposing the aforementioned petition to return property;

126. Thus, they have ratified and affirmed the seizure of Plaintiffs' property as an official act of the County of Alameda, and/or Defendant Fox, and/or City of Dublin and/or DPS;

**THIRD CAUSE OF ACTION**

**Violation of 42 U.S.C. § 1983 – Failure To Provide Due Process in Violation of the Fourteenth Amendment**

**(Against All Defendants)**

127. Plaintiffs repeat and re-plead Paragraphs 1 through 126, inclusive, and incorporate the same herein by reference;

128. 42 U.S.C. § 1983 provides that:

> Every person, who under color of any statute, ordinance, regulation, custom or usage of any state or territory or the District of Columbia subjects or causes to be subjected any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges or immunities secured by the constitution and law shall be liable to the party injured in an action at law, suit in equity, or other appropriate proceeding for redress…

129. Plaintiffs in this action are citizens of the United States and Defendants to this claim are persons for purposes of 42 U.S.C. § 1983;

130. The Defendants to this claim at all times relevant hereto were acting under the color of state law;

131. At the time of the complained of conduct, Plaintiffs had a clearly established right under the Fourteenth Amendment to be given due process in relation to the seizure of their property. *See Lavan v. City of Los Angeles,* 693 F.3d 1022, 1032 (9th Cir. 2012);

132. California law recognizes the right of ownership of personal property, a right that is held by "[a]ny person, whether citizen or alien." Cal. Civ. Code §§ 655, 663, 671. It is undisputed that Appellees owned their possessions and had not abandoned them; therefore, Appellees maintained a protected interest in their personal property. *Id* at 1031;

133. "An agency ... violates the Due Process Clause of the Fourteenth Amendment when it prescribes and enforces forfeitures of property '[w]ithout underlying [statutory] authority and competent procedural protections.'" *Nevada Dept. of Corr. v. Greene*, 648 F.3d 1014, 1019 (9th Cir.2011) (quoting *Vance v. Barrett*, 345 F.3d 1083, 1090 (9th Cir.2003));

134. Because "unabandoned possessions are "property" within the meaning of the Fourteenth Amendment, the City must comport with the requirements of the Fourteenth

1  Amendment's due process clause if it wishes to take and destroy them. *See United States v. James*
2  *Daniel Good Real Prop.*, 510 U.S. 43, 48, 114 S.Ct. 492, 126 L.Ed.2d 490 (1993) ("Our precedents
3  establish the general rule that individuals must receive notice and an opportunity to be heard before
4  the Government deprives them of property.")." *Id* at 1032;

5      135.    Plaintiffs have a valid property interest in the switchblades which were seized;

6      136.    Thus, pursuant to precedent, Plaintiffs were entitled to due process protections such
7  as a pre-deprivation hearing before their switchblades were seized, or a search warrant had one been
8  sought, approved, issued and then executed;

9      137.    Defendants violated Plaintiffs' due process rights by seizing their switchblades
10  without giving Plaintiffs' these protections;

11      138.    Defendants Cowens and Shepard knew or should have known of these rights at the
12  time of the complained of conduct as they were clearly established at that time;

13      139.    The acts or omissions of these Defendants, as described herein, deprived Plaintiff of
14  his constitutional and statutory rights and caused him other damages;

15      140.    The acts or omissions of Defendants to this claim as described herein intentionally
16  deprived Plaintiffs of their constitutional and statutory rights and caused them other damages;

17      141.    Defendant Cowens and Shepard are not entitled to qualified immunity for the
18  complained of conduct;

19      142.    Defendants Cowens and Shepard, at all times relevant, were police officers employed
20  by the DPS;

21      143.    As a direct result of Defendants' unlawful conduct, Plaintiffs have suffered actual
22  damages and losses as described herein entitling them to compensatory and special damages, in
23  amounts to be determined at trial. As a further result of the Defendants' unlawful conduct, Plaintiffs
24  have incurred special damages and may continue to incur other special damages related expenses, in
25  amounts to be established at trial;

26      144.    Plaintiffs are further entitled to attorneys' fees and costs pursuant to 42 U.S.C. §1988,
27  pre-judgment interest and costs as allowable by federal law. There may also be special damages for
28  lien interests;

145. Defendants County of Alameda, City of Dublin, DPS and Defendant Fox are also liable for this seizure because it was done pursuant to an official policy of Dublin Police Services;

146. Upon information and belief, the Dublin Police Services and/or the County of Alameda, and/or Defendant Fox and/or City of Dublin has a custom or policy of seizing switchblade knives even when, such as here, they are legally possessed;

147. Defendants County of Alameda, City of Dublin, DPS and Defendant Fox in his official capacity are also liable for this seizure because they have ratified the individual Defendants illegal seizure of Plaintiffs' switchblades;

148. They have done so by continuing to hold on to Plaintiffs' switchblades even after Plaintiffs' have demanded them back and opposing the aforementioned petition to return property;

149. Thus, they have ratified and affirmed the seizure of Plaintiffs' property as an official act of the DPS, and/or City of Dublin, and/or Defendant Fox and/or County Alameda;

150. As such County Alameda, City of Dublin, DPS and Defendant Fox in his official capacity are liable to Plaintiffs;

### FOURTH CAUSE OF ACTION

### Violation of California Civil Code § 52.1

### (Against All Defendants)

151. Plaintiffs repeat and re-plead Paragraphs 1 through 150, inclusive, and incorporate the same herein by reference;

152. The conduct of Defendants Cowens and Shepard, as described herein, acting in the course and scope of their employment for Defendant DPS and the County of Alameda, violated California Civil Code Section 52.1, in that they interfered with Plaintiffs' exercise and enjoyment of their civil rights, through an unreasonable seizure of their private property;

153. The conduct of Defendants Cowens and Shepard involved coercion because they seized Plaintiffs' property under threat of force.

154. As a direct and proximate result of Defendants' violation of Civil Code Section 52.1, Plaintiffs suffered violation of their constitutional rights, and suffered damages as set forth herein;

155. Plaintiffs are entitled to damages and an award of their reasonable attorney's fees pursuant to Civil Code Section 52.1(h);

### **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiffs request judgment be entered in their favor and against Defendants as follows:

1. For general and special damages, according to proof at trial;

2. Damages include, but are not limited to, the value of the inventory, past, present and future economic loss, and compensatory damages for illegal search and seizure;

3. Nominal damages;

4. For expenses and attorneys' fees pursuant to 42 U.S.C. § 1988;

5. For violation of California Civil Code §§ 52 and 52.1, statutory damages, and reasonable attorneys' fees;

6. For violation of California Civil Code § 52(b), damages against the Defendant peace officers, $25,000.00 for each offense, and reasonable attorney's fees;

7. For costs of suit incurred herein;

8. Such other further relief as the Court deems just and appropriate.

Dated:  May 29, 2025

Respectfully submitted,

By: /S/  Alan A. Beck
   Alan A. Beck, Esq.

*/s/Kevin Gerard O'Grady*
Kevin O'Grady (Pro hac vice)

Attorneys for Plaintiffs